## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JANET S. BENEDICT, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | 1:08-cv-1412-SEB-TAB |
| ) | |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

### Entry Discussing Complaint for Judicial Review

Janet S. Benedict ("Benedict") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

### I. Background

Benedict filed an application for SSI on June 10, 2003, alleging an onset date of disability of January 1, 1992. Her application was denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted and a hearing was conducted on June 5, 2006. Benedict appeared, accompanied by her attorney. Medical and other records were introduced into evidence. Benedict and a vocational expert testified at the hearing. The ALJ issued a decision denying benefits on October 27, 2006. On August 27, 2008, the Appeals Council denied Benedict's request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Benedict had not engaged in substantial gainful activity since January 1, 1992, the alleged onset date; (2) Benedict had "severe" impairments consisting of low back pain and seizure disorder; (3) Benedict did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) after consideration of the entire record, the ALJ found that Benedict had the residual functional capacity ("RFC") to perform unskilled, medium and light level work activities; (5) Benedict was unable to perform any past relevant work; (6) Benedict was born on March 20, 1954 and was 37 years old on the date that she alleges she became disabled, which is defined as a younger individual age 18-44, and at the time she filed her application, she was 49 years old, which is also defined as a younger individual; (7) Benedict had a limited education and was able to communicate in English; (8) transferability of job skills was not an issue because Benedict's past relevant work was unskilled; and (9) considering Benedict's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Benedict had not been under a disability as defined in the Act since June 10, 2003, the date the application was filed.

## II.  Discussion

### A.  Applicable Law

To be eligible for SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. § 416.908.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id.* The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.  Analysis

In this case, the ALJ determined that Benedict had severe impairments consisting of low back pain and seizure disorder, but that she could perform a significant number of unskilled, medium and light level jobs in the national economy. Benedict asserts four claims of error. First, she argues that the ALJ made an improper credibility determination; second, the ALJ's decision is internally inconsistent; third, the ALJ failed to articulate the basis of the RFC assessment, and fourth, the ALJ ignored an entire line of evidence supporting disability.

Benedict's first claim is that the ALJ erred in making his credibility determination. Benedict argues that the ALJ failed to articulate his reasoning as to how he evaluated her credibility.

In determining Benedict's credibility, the ALJ recited the appropriate regulations. (R. at 15, citing SSR 96-7p; SSR 96-4p; and 20 C.F.R. § 416.929). Those regulations identify seven examples of the type of evidence the ALJ should consider, in addition to the objective medical evidence, when assessing the credibility of an individual's statements about symptoms:

> (1) The individual's daily activities;
> (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> (3) Factors that precipitate and aggravate the symptoms;
> (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> (6) Any other measures the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board);
> (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

The ALJ acknowledged that Benedict alleged that she was disabled due to seizures, a bad back, and right arm pain. (R. at 15). Benedict testified that she had not had a seizure

for a couple of years and was no longer taking Dilantin. (R. at 16). The only record of a seizure was in April 2004. *Id.* The ALJ recited Benedict's activities of daily living, which included sitting and watching television and reading books. *Id.* She lived with a sister and had not worked since 2002. *Id.* Benedict testified that she had constant pain in her right wrist, which was broken at one time. *Id.* She had twenty-some stitches in her left hand sometime before she injured her right hand. *Id.* She testified that she could only walk a couple of blocks due to back pain and that using her right hand or wrist caused them to hurt more. *Id.* Benedict stated that she could stand for 25 minutes but then had to sit for 10-15 minutes before she could stand again. *Id.* Benedict testified that she took Aleve for back pain. *Id.* She stated that her back pain was worse than her hip pain. *Id.* The ALJ noted that emergency room records showed that she was seen for hip pain after falling on her right hip in January 2006, but that at the time no fracture was indicated on the x-rays. *Id.* No back pain was noted at that time. *Id.* A February 2, 2006, x-ray report indicated right pelvic fractures (non-displaced) and degenerative changes in the lower lumbar spine. *Id.* At that time, pain medication was prescribed and Benedict was sent home. *Id.* The file contained no further treatment records. *Id.* The ALJ noted that Benedict lacked money for medical treatment. *Id.*

The ALJ discussed Benedict's daily activities. He discussed the parts of her body that experienced pain. The ALJ discussed the objective evidence of record, including emergency room visits and x-ray reports. The ALJ discussed Benedict's history of back, hip and right arm pain. He acknowledged that use of her right hand and wrist aggravated her symptoms. The ALJ properly noted that there had been little seizure activity and that Benedict was not taking seizure medication. The ALJ noted that Benedict took over-the-counter medication for back pain. The ALJ adequately recited Benedict's allegations of functional limitations and pain.

The ALJ concluded that Benedict's medically determinable impairments could reasonably produce the alleged symptoms but that Benedict's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible or substantiated by the objective medical evidence. *Id.* He further stated that Benedict's testimony was not entirely consistent with the contents of the medical record. *Id.* These conclusions are supported by substantial evidence.

A reviewing court affords a credibility finding "'considerable deference,' and [will] overturn it only if 'patently wrong.'" *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)). "[A]n ALJ's credibility assessment will stand as long as [there is] some support in the record." *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) (internal quotation omitted). "Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed." *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) (citations omitted). The court "will uphold an ALJ's credibility determination if the ALJ gave specific reasons for the finding that are supported by substantial evidence." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). Here, the ALJ provided specific reasons for his finding that Benedict was not fully credible and those reasons are supported by the substantial evidence. The ALJ did not ignore the applicable criteria or evidence in making

4

his assessment. The ALJ's discussion relating to Benedict's credibility is adequate to allow the court to trace his reasoning. The court does not find that the ALJ's analysis was patently wrong, and therefore, must affirm the ALJ's credibility determination.

Benedict next argues that the ALJ's decision is internally inconsistent because the ALJ stated at step four that Benedict could not perform her past relevant work as a packer while at the same time he determined at step five that Benedict could perform a packer job. At the hearing, Benedict testified that she had worked as a packer for two to three months. (R. at 276-77). In her application for benefits, Benedict described the 1990 job as a "tomato repacker" job in a factory and that she lifted 20 pounds on that job. (R. at 102-03). At step four of the decision, the ALJ concluded that the requirements of that job exceeded Benedict's RFC. (R. at 17). When he asked the vocational expert about past work, the ALJ noted that the earnings records showed earnings sufficient to be substantial gainful activity only in the year 1989. (R. at 290). Benedict stated that she did not remember what work she performed that year. *Id.* Accordingly, the ALJ told the vocational expert to assume that Benedict did not have any past relevant work. *Id.* Although there is ambiguity as to whether Benedict had no past relevant work or whether she could not perform her past relevant work, the step four finding was in Benedict's favor and does not warrant reversal.

When asked about jobs that Benedict could perform, the vocational expert identified "packing line worker" as one possibility. (R. at 291). The vocational expert stated that this was a light level job, and that there were 5,125 such jobs available. (R. at 291-92). There is nothing inconsistent between the finding at step five that Benedict could perform some light level "packing line worker" jobs and a finding that Benedict could not perform the tomato packer factory job as described by Benedict. Such jobs are not the same. The court can trace the path of the ALJ's reasoning and the decision is not internally inconsistent in this regard.

Benedict also contends that the ALJ's decision was inconsistent because it failed to explain what non-exertional limitations were considered in determining the RFC assessment. Although the finding in bold typeface in paragraph 4 recites that Benedict had the RFC to perform unskilled, medium and light level work activities, the ALJ explained in the body of the decision that he also included the seizure restrictions imposed by the State Agency physicians, consisting of never climbing ladders, ropes or scaffolds. (R. at 16, 156). Furthermore, the ALJ included the non-exertional seizure restrictions of not working at heights or around dangerous machinery and "whatever else might be relevant there" when he posed the hypothetical question to the vocational expert. (R. at 17, 291). The non-exertional limitations were adequately discussed and accommodated by the ALJ.

Benedict's third claim is that the ALJ failed to articulate a function-by-function assessment of Benedict's RFC. The ALJ reviewed the evidence of record and explicitly relied on the RFC assessment provided by the State Agency physicians. This was the only RFC opinion in the record. Benedict argues that the ALJ failed to include limitations on pushing and pulling or any other limitations for hand, arm and elbow problems. This argument is not persuasive because, as the Commissioner points out, substantial evidence did not support imposing such restrictions. The State Agency report did not include any

restrictions on Benedict's use of her arm, nor did any other medical opinion support such a finding. Indeed, the ALJ acknowledged that Benedict had had a right wrist fracture and a left hand laceration but he determined that no medical evidence showed that they were ongoing severe impairments. (R. at 15). Benedicts points to no evidence to the contrary.

Benedict's fourth claim is that the ALJ improperly failed to consider a 1995 decision in which an ALJ denied disability benefits but determined that Benedict was limited to sedentary work. This claim warrants no discussion because an assessment by another ALJ a decade earlier would simply have no relevance to the present SSI application.

As noted above, the court's role in this case is not to attempt a *de novo* determination of Benedict's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence. If the ALJ's view of the evidence is supported by substantial evidence, the court must affirm the decision. "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (internal quotation omitted). The court is "not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

"An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007). In this case, the ALJ sufficiently articulated his assessment of the evidence to enable the court to "trace the path of [his] reasoning." *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation omitted). Accordingly, because substantial evidence supports the ALJ's evaluation of Benedict's impairments, the ALJ's decision must be affirmed.

### III.  Conclusion

There was no reversible error in the assessment of Benedict's application for SSI. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. Under these circumstances, Benedict is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 12/22/2009

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana